Carol Jean STANLEY, Appellant

v.

The STATE of Texas, Appellee

No. 10–14–00320–CR

Court of Appeals of Texas,
Waco.

Order issued and filed May 7, 2015

Carol Jean Stanley, pro se.

Doyle L. Young, for Carol Jean Stanley.

Sterling A. Harmon, Abel Reyna, Gabriel Price, for The State of Texas.

Before Chief Justice Gray, Justice Davis, and Justice Scoggins

## ORDER

PER CURIAM

Appellant, Carol Jean Stanley, was convicted of two counts of possession of a controlled substance and sentenced to 18 months in a state jail facility. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2010). The sentence was suspended, and appellant was placed on community supervision for three years. Ten months later, appellant pled true to several violations noted in the State's motion to revoke appellant's community supervision. Appellant's community supervision was revoked for each conviction, and appellant was sentenced to 18 months in a state jail facility.

Counsel for appellant filed an *Anders*[1] brief. In accordance with the Court of

1. *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Criminal Appeals' opinion in *Kelly v. State*, counsel prepared and sent to appellant an Appellant's Motion for Access to Appellate Record. *See Kelly v. State*, 436 S.W.3d 313, 315 & 320 (Tex.Crim.App.2014). Appellant signed the motion for access and sent it to this Court.[2] It was filed on January 2, 2015.

Prior to the Court of Criminal Appeals' opinion in *Kelly*, in the extremely few instances where the appellant requested access to the record to prepare a response to counsel's motion to withdraw and *Anders* brief, the Court would notify the defendant that the record was available from the trial court clerk and provide the trial court clerk's address. If the trial court clerk failed or refused to provide the record upon request by the defendant, we would then order the clerk to provide the record as requested. *See e.g. Brown v. State*, 10-08-00180-CR, letter order of March 24, 2009.[3] Because the *Anders* procedures were modified by the Court of Criminal Appeals in *Kelly*, and in anticipation that more appellants would be seeking access to the record, this Court reevaluated its *Anders* procedures, both the methods and responsibility, which allows an appellant to obtain access to the record. *See Kelly*, 436 S.W.3d at 318. ("[W]e believe that the courts of appeals also have an on-going responsibility, once an appellant manifests his desire for pro se record access, to

officially guide the process and follow through to make sure that such access is granted before they rule on the validity of appointed counsel's *Anders* brief and motion to withdraw.").

The first issue that was resolved upon the reevaluation of our procedures was that when the appellant filed a motion seeking access to the record, we would order counsel to provide the record to the appellant. We recognized that to perform the duty required by *Anders*, counsel would have had to review the entire record. Thus, it was logical to require counsel, who at that time still represents the appellant, to provide the appellant access to the record. *Hall v. State*, No. 10-14-00205-CR (Tex.App.—Waco Dec. 18, 2014, order) (not designated for publication).

This requirement is entirely consistent with the Court's opinion in *Kelly*.

[T]he Sixth Court has adopted a policy that appellate counsel "has the responsibility to procure a copy of the record for appellant to review in preparation of the pro se response to the *Anders* brief ... We agree with the Sixth Court that appellate counsel has a continuing responsibility to his client, extending beyond the filing of a motion to withdraw and Anders brief, to facilitate the appellant's access to the appellate record should the appellant so desire.

---

**2.** We note that motions using the instructions prescribed in *Kelly*, which are prepared by counsel and filed by an appellant, are inherently deficient because they do not contain proof of service nor is a copy filed with the court as required by the Texas Rules of Appellate Procedure. *See* Tex.R.App. P. 9.3(a)(1). *See Kelly*, 436 S.W.3d at 320 ("... counsel should include in his letter to the appellant a form motion for this purpose, lacking only the appellant's signature and the date, and inform the appellant that, in order to effectuate his right to review the appellate record pro se, should he choose to invoke it, he must sign and date the motion and send it on to the

court of appeals within ten days of the date of the letter from appellate counsel.").

**3.** Subsequent to the trial court clerk providing the record to the defendant in *Brown*, the State had to request an extension of time in which to file its response because Brown had failed and refused to return the record to the trial court clerk. Brown subsequently filed a motion for a free record, presumably for purposes other than filing his response to counsel's *Anders* brief, as that response had already been filed.

*Kelly v. State,* 436 S.W.3d 313, 318 (Tex. Crim.App.2014).

In placing this burden on appointed counsel, we were intentionally nonspecific in the source and form of the record that was to be provided to the appellant. Counsel could prepare and provide a duplicate copy or simply provide the copy obtained from the trial court clerk pursuant to Texas Rule of Appellate Procedure 34.5(g) (clerk's record) and 34.6(b) (reporter's record). The purpose was to allow counsel discretion as to the most efficient method of providing a complete record to the appellant.

In deciding *Hall,* we left open the question of where we would place the burden in the event counsel notified the Court that counsel was no longer in possession of a copy of the record. Today, we must decide that issue.

Appellant's Motion for Access to Appellate Record was granted on February 5, 2015. Based on our precedent in *Hall,* counsel was ordered to forward the copy of the record used to conduct the review for the *Anders* brief to appellant and to simultaneously notify this Court and the District Clerk when counsel had completed this task. But, if counsel no longer possessed a copy of the record, counsel was required to notify this Court within 7 days from the date of the Order; in which event, further orders addressing appellant's access to the record would be made.

Counsel has notified this Court that counsel no longer possesses a copy of the record.

Accordingly, we now specify the procedure to be followed to provide an appellant with access to the appellate record, even if counsel no longer possesses the copy of the record used in counsel's review for the *Anders* brief.

Counsel is ORDERED to obtain and send appellant, within 21 days from the date of this order, copies of the clerk's and reporter's records and to simultaneously notify this Court, the State, the trial court, and the trial court clerk when counsel has completed this task. Counsel must also notify appellant and this Court if the record made available to appellant must be returned to the trial court clerk.

By placing the burden on appointed counsel, we again rely upon the fact that counsel is appointed to represent the appellant, is still representing the appellant at this stage of the proceeding, and is in the best position to obtain and provide a copy of the record for the appellant's use. *See Kelly v. State,* 436 S.W.3d 313, 319 (Tex.Crim.App.2014) ("Appointed counsel's duties of representation, therefore, do not cease simply because he has submitted a motion to withdraw, along with supporting *Anders* brief, in the court of appeals. Until such time as the court of appeals relieves him of this professional obligation, appellate counsel must continue to 'act with competence, commitment and dedication to the interest of the client and with zeal in advocacy upon the client's behalf.' "). The appellant, who is most often in prison at this point in time, is at a disadvantage in making requests to obtain the record from the trial court clerk. The trial court clerk knows there is appointed counsel and could be understandably reluctant to respond to a request for a copy of the record from an inmate. *See* TEX.R. JUD. ADMIN. 12.4(a)(4). *See also Kelly,* 436 S.W.3d at 320 n. 21 ("the trial court is unlikely to be aware of the progress of the appeal, appointed counsel's motion to withdraw with attendant *Anders* brief, or the fact that the appellant's pro se right to review the appellate record has been triggered. The trial court, perhaps assuming that a pro se motion for access to the appellate record is, at best, nothing more

than an impermissible attempt at hybrid representation on appeal, may well choose to simply ignore it.").

Further, it may be necessary for counsel to explain to the appellant why certain parts of the record are not available to an appellant due to the nature of the testimony or exhibits. Finally, it is counsel, and not the district court clerk, that is in the best position to work with the wardens, guards, and prison librarians to facilitate an inmate's access to the record for review in preparation of a response.[4]

Counsel is reminded that there are certain rules and statutes that prohibit certain sensitive or illegal information from being included in a public record. *See* TEX. R. APP. P. 9.10. If counsel has identified any such information while conducting the review of the record as necessary to prepare the *Anders* brief in support of counsel's motion to withdraw, counsel should take appropriate steps to redact or in some manner remove that information from the copy of the record that is being provided to appellant.

Appellant is ORDERED to file his pro se response to counsel's *Anders* brief within 45 days from the date counsel sends notice to the Court that the record has been forwarded to appellant, unless the due date is extended by order of this Court upon proper and timely motion by appellant. If counsel notified appellant and this Court that the record being provided to appellant was obtained from the trial court clerk and must be returned thereto, appellant is ORDERED to not take the record apart or mark on or modify the record.

If the record must be returned to the trial court clerk, so that its return to the trial court clerk can be monitored and enforced, Appellant is ORDERED to send the record to this Court with appellant's response. If no response is filed, but nevertheless, the record must be returned to the trial court clerk, appellant is ORDERED to send the record to this Court within 60 days of the date the attorney sends notice to the Court that the record was forwarded to the appellant, unless the due date is extended by order of this Court upon proper and timely motion by appellant.

Appellant's failure to comply with this Order, including the failure to send the record to this Court within the time specified, if herein required, may result in the dismissal of the appeal under our inherent authority upon the presumption that the record was obtained under false pretense and with no intent to pursue the appeal but instead was obtained for the purposes of delay. *See e.g. Ealy v. State*, 222 S.W.3d 744, 745 (Tex.App.—Waco 2007, no pet.).

(Justice Davis dissenting)

## DISSENT TO ORDER

REX D. DAVIS, Justice

In *Anders* cases where appointed counsel has not already provided the appellant with the record, this Court has historically notified the appellant by letter as follows:

---

**4.** In light of this announced procedure, counsel that files an *Anders* brief may elect to retain the record used in counsel's review until it can be determined whether the appellant will seek a copy of the record to review in preparation of the appellant's *pro se* response. Moreover, given the brevity of most records in *Anders* appeals, counsel may find it most efficient to provide the appellant a copy of the record at the time counsel provides a copy of the motion to withdraw and brief in support. This may be especially easy in cases wherein the record, even the rare large record in *Anders* appeals, can be reduced to a compact disc that can be very inexpensive to duplicate and mail.

Your attorney has filed a brief finding that your appeal is frivolous. You have a right to review the record from your trial and file a written response with this Court raising any issues which you think the Court should consider in deciding your appeal. If you wish to obtain a copy of the record, you must contact the trial court clerk, whose address is:....

Our letter, a copy of which is also sent to the trial-court clerk, then provides the appellant with the trial-court clerk's address and cites to *Gonzales v. State*, 984 S.W.2d 790, 791 (Tex.App.—Waco 1999, order). In *Gonzales*, we ordered the trial-court clerk to provide the appellant with the copy of the record on file with the trial-court clerk. *See id.; see also Kelly v. State*, 436 S.W.3d 313, 321 (Tex.Crim.App. 2014) ("[B]y rule the trial court clerk retains a duplicate that is specifically designated for use by the parties. Zeroing in on this fact, many of the courts of appeals instruct the trial court to have its clerk make the duplicate appellate record available to the appellant, which generally requires the trial court clerk to forward a physical copy to the appellant if he is incarcerated.").

Since our order in *Gonzales*, I am aware of only one *Anders* case in which the appellant was unable to obtain the record from the trial-court clerk without our intervention. Plainly, our letter and its citation to *Gonzales* notify the trial-court clerk that he or she must provide the record to the appellant if the appellant requests it. And I cannot recall a case in this Court

similar to *Kelly*, where the Court of Criminal Appeals held that the court of appeals erroneously decided an *Anders* case without satisfying the appellant's request for access to the appellate record. *Kelly*, 436 S.W.3d at 322.

Therefore, I am puzzled by the majority's order, which announces new and overly burdensome procedures in *Anders* cases.[1] I believe that the new procedures set forth in this order contradict *Kelly* and are confusing and unnecessary.[2] Furthermore, I think that by threatening an indigent and usually incarcerated appellant with dismissal if the indigent appellant cannot afford to mail the usually voluminous record to us, the majority's order likely violates due process and could chill the right of indigent appellants to review the record in *Anders* cases. Accordingly, I respectfully dissent.

The majority's order is confusing because it orders Stanley's appointed counsel to obtain a copy of the appellate record and send it to Stanley, but it does not describe what "copy" means. If the majority's order means that Stanley's appointed counsel is to obtain the copy of the appellate record on file with trial-court clerk and send that copy to Stanley, the order should say so.[3]

And if the majority's order means that Stanley's appointed counsel is to obtain and make a photocopy of the appellate record to send to Stanley, it should say so. If that is the case, the order creates the further problem of who (Appointed counsel? The county?) should bear the cost of

---

1. In cases like this where we have a motion for pro se access to the appellate record and are required by *Kelly* to enter a formal written order, *see Kelly*, 436 S.W.3d at 321, I would adopt the language from our template letter and add only that the trial-court clerk must notify us in writing of the date that the clerk sent the record to the appellant. *See id.*

2. "This [order] reminds me of the adage, if it ain't broke, then regulate it until it is." *Kelly*, 436 S.W.3d at 323 (Alcala, concurring).

3. As noted above, our template letter to appellants in *Anders* cases has been successfully accomplishing this task without counsel's involvement for quite some time.

photocopying appellate records that are often many hundreds, if not thousands, of pages. Furthermore, in *Kelly*, the Court of Criminal Appeals specifically stated that it would not require appellate counsel to copy and send the record to the appellant:

> [I]t is sometimes the case that, when the appellate record is not voluminous, appellate counsel will *sua sponte* send a copy of the appellate record to the appellant along with the *Anders* brief and motion to withdraw. That would certainly expedite the process, and the court of appeals could then simply issue an order requiring the appellant to file his response to the *Anders* brief by a date certain. *But we do not require appellate counsel to do so.*

*Kelly*, 436 S.W.3d at 320 n.22 (emphasis added). While the Court of Criminal Appeals in *Kelly* left us some leeway on how to insure that an appellant obtains the record,[4] we should not adopt a procedure that *Kelly* specifically declined to require.

Next, I disagree with the order's requirement that Stanley must send the copy of the appellate record to this Court. If the court's order intends for Stanley to be provided with the copy of the appellate record on file with the trial-court clerk and for Stanley to send us that copy, I see several problems.

First, if we are going to require the appellant to return the trial-court clerk's copy of the appellate record, we should require that it be returned to the trial-court clerk, not to us. Our clerk's office should not be burdened with handling what are usually voluminous appellate rec-

ords. Based on the terms of the court's order ("Appellant's failure to comply with his Order ... may result in the dismissal of this appeal"), presumably our clerk's office will have to inspect the appellate record upon receipt to confirm that all of it has been sent to us and that it was not taken apart or marked on. Also, our clerk's office should not have to bear the cost of then sending the appellate record to the trial-court clerk. Lastly, now that we are in the age of electronic appellate records, I question whether the trial-court clerk needs the copy of the appellate-record returned at all. It is likely that the trial-court clerk will just print a copy of the appellate record for the appellant from the electronic version and will not need back the paper copy from the appellant.

And if the court's order intends for appointed counsel to provide a photocopy of the appellate record to Stanley, I do not see a need for requiring Stanley to send us that photocopy of the record. It will burden our clerk's office with handling, storing, and disposing of large volumes of documents that we have no need to possess in the first place.

Finally, for several reasons I am troubled by the order's threat of dismissal of the appeal under our inherent authority if Stanley fails to timely send the copy of the appellate record to this Court. First, the order relies on our "inherent authority"[5] and on the presumption that the appellate record was obtained under false pretense (delaying the appeal) to support dismissal if the record is not timely sent to us by Stanley, whether or not she files a response. But in an *Anders* case, the appel-

4. "By all accounts, each of these procedures has worked tolerably well in the past, and we need not mandate or even recommend one over the others." *Kelly*, 436 S.W.3d at 321.

5. Our inherent authority allows us to take certain actions to aid us in the exercise of our jurisdiction, in the administration of justice, or in preserving our independence and integrity. *State v. Johnson*, 821 S.W.2d 609, 612 (Tex.Crim.App.1991) (citing *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 399 (Tex. 1979)).

lant, who has already been appointed counsel, is necessarily indigent. Therefore, it seems just as, if not more, likely that if the record is not timely sent to us by the appellant, the reason is that the indigent and usually incarcerated appellant could not pay the cost of mailing the appellate record to us from prison or jail.[6]

Dismissal of an appeal—even an appeal in which an *Anders* brief has been filed—because an indigent appellant cannot pay the cost of mailing the appellate record to us cannot withstand constitutional scrutiny. It is indisputable that an indigent defendant has a constitutional right to a free appellate record and that convicted persons have a constitutional right of access to the courts. *See Griffin v. Illinois*, 351 U.S. 12, 18–19, 76 S.Ct. 585, 590–91, 100 L.Ed. 891 (1956) (holding that state provision denying a complete and free record, and thus full appellate review, to indigent persons violates due process and equal protection); *In re Bonilla*, 424 S.W.3d 528, 531–33 (Tex.Crim.App.2014) (orig. proceeding) (discussing right of access to courts). While the right of an appellant in an *Anders* case to have access to the record has not been held to be *constitutionally* required, it nonetheless is a recognized right. *See Kelly*, 436 S.W.3d at 316 n.7. Also, the mere threat of dismissal and the indigent appellant's prospect of having to pay the cost of mailing

the record could chill the exercise of the appellant's right in an *Anders* case to review the record.

Furthermore, while I concede the possibility that an appellant *might* request the appellate record in an *Anders* case to delay the appeal, in addition to indigence, there are other realistic and excusable reasons that could explain why an indigent and incarcerated appellant might not timely send us the record.[7] I thus disagree with the blanket presumption of an intent to delay the appeal if Stanley fails to timely send us the record. To comport with due process, the Court should provide the appellant the opportunity to rebut the presumption before dismissal. If the appellant fails to timely send us the appellate record, the Court should first notify the appellant that the time period for sending us the appellate record has passed and that the Court will dismiss the appeal unless, within an adequate time period, the appellant either sends us the record or provides a sufficient reason why the record has not been timely sent.

Finally, once an *Anders* brief has been filed and the appellant has been given adequate time to file a pro se response, the appeal is at issue and the Court can proceed to decide the case on the merits. The appellant is not required to file a pro se response, and the appeal can be decided

---

**6.** Some appellate records in criminal cases are small; most are not, and some require more than one standard file box; one box alone could cost an indigent appellant approximately $20 to mail. Regardless, the cost of mailing an appellate record from jail or prison is not insubstantial for an indigent appellant who may have little or no money in his or her inmate account.

**7.** Because of this Court's extensive experience with inmate civil litigation, I am aware of at least the following possible reasons (in addition to indigence) why an incarcerated appellant might be unable to timely send us the

record: the appellant has been transferred to another unit and her property, which is moved separately, has not caught up with her; the appellant's legal materials, including the record, have been confiscated (rightly or wrongly) by prison authorities; the appellant's unit is on lockdown; the appellant has been disciplined and cannot use the commissary to buy postage to mail the record; and the record has been lost or destroyed through no fault of the appellant (*e.g.*, a cellmate destroyed it, or prison authorities confiscated it and either intentionally or accidentally destroyed it).

without the record being sent to us from the appellant. In my view, dismissing the appeal at that juncture because the indigent appellant has not timely sent the copy of the record to us is unwarranted.

In conclusion, I would grant Stanley's motion and, as we have done for years, order the trial-court clerk to send the appellate record to Stanley. I would further require the trial-court clerk to notify us in writing of that act. Because the majority does otherwise, I respectfully dissent.